## BROWN v. THOMSON.

1. A married woman may manage her separate estate through her husband or other person as agent, and for articles purchased by such agent for the use of her separate estate, she is liable.

2. Where a married woman represents as a fact that she is purchasing articles or borrowing money for the use of her separate estate, and her creditor does not know to the contrary, she will be afterwards estopped from denying the truth of such representation. The burden is on the creditor to show that the contract of the married woman related to her separate property; but after proof of such representation, the burden shifts, and the married woman must show that the creditor knew that her representation was not true.

3. Where a married woman by letter informs a merchant that she owns

a valuable plantation, with a promising crop thereon, and asks for credit, saying she will charge her tenants the same prices that are charged her, and that she will settle in the fall for all goods purchased, her letter amounts to a representation that articles thereafter purchased by her would be for the use of her separate estate.

4. This court has no jurisdiction to review the refusal of a Circuit Judge to grant a new trial, or a new trial *nisi*, moved for upon the ground that the verdict of the jury was not supported by the evidence.

5. Where the verdict must depend upon the view taken by the jury of the evidence, the trial judge has no right to direct a verdict; and not having directed a verdict, it cannot be said in such case that the verdict was contrary to the charge of the judge.

Before KERSHAW, J., Spartanburg, October, 1888.

This was an action by the administrators of John J. Brown against Jessie M. Thomson. See 27 *S. C.*, 500. The letter upon which the case in part turns, was as follows:

MAJOR BROWN: Some time since I received your note and have not felt able to answer till now. I want to say, Major, in confidence, and not boasting, but as a matter of business, that I own property in York County to the value of thirty thousand dollars, and there is not a lawyer there who will not tell you that my name stands high, financially; and, moreover, the most moderate judges place our growing cotton crop at one hundred and fifty bales as a low figure, and as certain of that, with no natural disaster. Mr. Richard Thompson, who is always moderate and safe in his estimates, places our crop as above, while many go over this. I state this to show our ability to meet our obligations, and I now wish to say that I propose to settle fairly and to your satisfaction every dollar due you, and to make the proper difference between cash and time prices, on account of our disappointment in not paying you, caused by our not getting money firmly promised.

Mr. Thomson says we ought to pay the time price, and when we settle, you will be perfectly satisfied, as we will charge our tenants the same you charge us, and it will not be our paying it really.

We have traded with you and got along so friendly, and you can rest perfectly assured that our settlement this fall will be prompt and satisfactory. We prefer trading with you as we stated, although we shall want but little. One of our tenants is here now and wants fifty pounds of bacon, which I should like to get from you. Please state what you will charge for this, pay-

able Nov. 1st. Hoping that what I have written will prove satis-
factory, I remain,

      Very respectfully,

July 12th, 1884.   ·     MRS. J. M. THOMSON.

The judge charged the jury as follows:

*Gentlemen of the Jury:* The legal propositions which I shall
submit to you are contained in requests to charge, first, on the
part of the plaintiff, and also on the part of the defendant, with
slight modifications to both sets of requests.

I charge you in this case, that if the defendant's husband, W.
W. Thomson, had the management and control of her farm as
agent, and she recognized his orders to, and purchases from, J. J.
Brown, that she is liable for all articles purchased by him for use
on the farm and supplies for her tenants. After the writing of
that letter, which is put in evidence, signed by the defendant,
and said to bear date, or at least to have been written on July 12,
1884, the burden is on the defendant of showing that the articles
purchased were not for use on her farm or for her tenants. The
defendant is estopped by that letter from denying that the goods
purchased after the writing of that letter were for use on her
plantation, or for her tenants, unless it be shown that J. J. Brown
knew that such goods were intended for other purposes. Defen-
dant is liable for all articles purchased by her of the plaintiff's
intestate, Mr. Brown, except those for use of herself and family.

Now, the defendant's requests. Even if defendant was fully capa-
ble of contracting, the books of account would not be evidence as
to articles which are itemized in the account. Charges on the
books for cash loaned or advanced, or simply for amount or
amount of order, are not of themselves sufficient proof of indebt-
edness, even against a person fully capable of contracting. But
if they are sustained by the orders, or by other evidence in the
case, of course they would be sufficiently established. Before a
married woman can be held liable in an action of this kind, two
things must concur: She must authorize or ratify the contracts;
the contract must have reference to her separate estate. A prom-
ise of a married woman to pay for articles bought and used as
household supplies, cannot be enforced in an action such as is
brought here. I would rather say, cannot be enforced in this

action, the Supreme Court having adjudged that question in this very case. The defendant in this action cannot be bound for the provisions and clothing of herself, her husband, and their children; and under the decision of the Supreme Court in this case, to bind a married woman in an action of this kind, the contract must be shown to have reference to her separate estate. The credit must have been extended to her alone, and the contract for her own purposes. The burden of the proof, as to all the facts necessary to be established in action on the alleged contract of a married woman, is generally upon the plaintiff; and if the proof is equally balanced, the verdict must be for the defendant. But after a representation to the creditor, that the contract is made with reference to her separate estate and for her benefit, then the burden would be shifted, and the defendant must show that the articles got were not, as represented, for the benefit of her separate estate.

You will take the record, gentlemen, and find a verdict for any balance, which, according to these legal principles, there may be found due by the defendants, taking off the payments which have been proved in the case, and throwing out of the account those items which are not sufficiently proved, and to which, according to the law as I have laid it down, the defendant may be found not entitled. Find a verdict for whatever balance you may find, after allowing those deductions, if any.

*Messrs. Thomson, Nicholls & Moore,* for appellant.

*Mr. R. K. Carson,* contra.

October 19, 1889. The opinion of the court was delivered by
MR. JUSTICE McIVER. This is the second appeal in this case, and for a more full statement of the facts than it is deemed necessary to make here, reference should be had to the case as reported in 27 S. C., 500. It is sufficient to say, that the action was to recover the amount of an account for goods, wares, and merchandise, alleged to have been sold and delivered by plaintiff's intestate to the defendant, who was, and is, a married woman, during the year 1884. Under the former appeal, this court held that

while the defendant, though a married woman, would be liable for such articles as were purchased by her, or by her authority, for the use of her separate estate—her plantation—yet she would not be liable for household supplies furnished her for the use of herself and family, under such a proceeding as this, though plainly indicating that, under proper allegations and proper proofs, the income of the defendant's separate estate might be subjected to the payment of such portion of the account as should appear to have been contracted for the use of herself and family. The case was, therefore, sent back for a new trial, in order that the jury might pass upon the question as to how much of the account sued on the defendant should be held responsible for under the principles above stated.

The case having come on for a new trial before his honor, Judge Kershaw, and a jury, a verdict was rendered for very nearly, though not quite, the whole amount of the account; and a motion for a new trial on the minutes, based upon the ground, "that the verdict was contrary to the evidence and the charge of the presiding judge, and that for at least a portion of the account there were no grounds whatever to sustain the verdict," having been made and refused, defendant appeals upon the following grounds, imputing error to the Circuit Judge :

"1. In charging that if the defendant's husband had the management and control of her farm as agent, and she recognized his orders to, and purchases from, J. J. Brown, that she is liable for all articles purchased by him for use on the farm and supplies for tenants.

"2. In charging that, after the writing of that letter, which is put in evidence, signed by the defendant and said to bear date, or at least to have been written, on the 12th July, 1884, the burden is on the defendant of showing that the articles purchased were not for use on her farm or for her tenants.

"3. In charging that defendant is estopped by that letter from denying that the goods purchased were for use on her plantation or for her tenants, unless it be shown that J. J. Brown knew that such goods were intended for other purposes.

"4. In charging that defendant is liable for all articles pur-

chased by her of the plaintiff's intestate, Mr. Brown, except those for use of herself and family.

. "5. In refusing to grant a new trial.

. . "6. In not, at least, granting a new trial *nisi.*"

The charge of Judge Kershaw appears to be fully set out in the "Case," and should be incorporated with the report of this decision. An examination of it will show that he instructed the jury precisely in accordance with the principles laid down in the former decision. The error complained of in the first ground of appeal certainly cannot be established, for that portion of the charge there assailed expressly received the sanction of this court at the hearing of the former appeal. There can be no doubt that a married woman may manage her separate estate, either in person or by an agent, and there is as little doubt that she can constitute her husband her agent for that purpose (*Greig* v. *Smith,* 29 S. C., 426); and if such agent purchases articles for the use of her separate estate—her farm—or supplies for her tenants thereon, she is unquestionably liable therefor. Whether the husband has been constituted agent, and whether the purchases made by him as such were for the uses specified, are questions of fact for the jury, and must be left to them, as was done in this case.

The second and third grounds of appeal raise questions not presented at the former hearing, and must, therefore, now be determined. These questions are as to the proper construction of the letter of the 12th of July, 1884, from defendant to plaintiff's intestate, a copy of which is set out in 27 S. C., at page 501, and the estoppel claimed to arise therefrom. We think it clear, that where a married woman represents to the creditor that the articles purchased, or the money borrowed, are for the use of her separate estate, she will be estopped from afterwards disputing that representation, unless it also appears that the creditor knew at the time that he extended the credit that such representation was not true, for then he would not be misled, and there would be no grounds for the estoppel: *Greig* v. *Smith, supra ; Tribble* v. *Poore,* 30 S. C., 97.

As the Circuit Judge very properly said to the jury, before a married woman can be held liable on a contract, two things must be established—first, that she made the contract, and, second,

that it was such a contract as she had the power to make. In such cases, therefore, it is always a question of fact whether the contract is such an one as the married woman had the power to make—that is, whether it is a contract with reference to her separate estate. If, therefore, at the time, or before, she obtains credit, she represents to the creditor, as a matter of *fact*, that the contract is of that character, it would operate a fraud to allow her afterwards to dispute such a representation of *fact*. But her mere expression of *intention* to bind her separate estate for the performance of a contract which she has no *power* to make, cannot operate as an estoppel, for the obvious reason that the expression of an intention to do that which she has no power to do, ought not to mislead one who is presumed to know the law, as every one is.

The only inquiry, then, is whether the letter of 12th of July, 1884, was properly construed to amount to a representation on the part of the defendant, that the articles purchased after it was written were for the use of her separate estate. It seems to us that the whole tenor of the letter was well calculated to create such an impression. While it is quite true, that where a creditor is seeking to enforce a contract alleged to have been made by a married woman, the burden of proof is, in the first instance, upon him to show that the contract is of such a character as a married woman has the power to make (*Habenicht* v. *Rawls*, 24 S. C., 461); yet, after it had been shown that the married woman had represented, as matter of *fact*, that the contract was made with reference to her separate estate, then the burden of proof shifts, and it is incumbent upon her to show such facts as would defeat the estoppel arising from such representation—not simply that "the articles got were not, as represented, for the benefit of her separate estate," as stated by the Circuit Judge, more favorably to defendant than she had a right to ask; for when the jury have reached the conclusion that the articles were purchased upon her representation that they were for the use of her separate estate, that concludes any further inquiry, except that the creditor knew, at the time he extended credit, that the articles were not purchased for that purpose, and the burden of showing this is upon

the married woman. We do not see, therefore, how either the second or third ground of appeal can be sustained.

As to the fourth ground of appeal, it is sufficient for us to say that we think it rests upon a misconception of the judge's charge, and cannot, therefore, be sustained. In that portion of the charge to which this exception seems to point, the Circuit Judge was simply drawing the attention of the jury, as directed by the former decision, to the distinction between articles purchased for the use of defendant's plantation and of the tenants thereon, and articles purchased for her own use, or of members of her family ; and no such error as that which it is sought by this exception to impute to that portion of the charge, can be discovered.

It only remains to consider the fifth and sixth grounds of appeal, in which it is claimed that the Circuit Judge erred in refusing the motion for a new trial, or, at least, in not granting a new trial *nisi.* This depends so entirely upon questions of fact, over which we have no jurisdiction, that it is scarcely necessary to say more upon the subject. Whether the plaintiffs were entitled to a verdict for the whole amount of the account sued on, or only a portion thereof, depended upon the view which the jury might take of the evidence ; and whether they erred in the view which they took, is not a matter which we can consider. The questions of fact arising in the case were submitted to the jury, under instructions as to the law, of which, as we have seen, the defendant has no legal right to complain, and their finding is conclusive.

It is a mistake to suppose or assume, as is done in the argument submitted by counsel for appellant. that the jury disregarded the instructions of the Circuit Judge, and, therefore, that he was bound to grant a new trial. This was not a case in which the Circuit Judge had the power to direct, as matter of law, that the verdict should be either one way or the other, for the very obvious reason, that it depended upon what view the jury might take of the evidence. See what is said upon this subject in the very recent case of *McCord* v. *Blackwell* (*ante*, 138), reported in 9 S. E. Rep., at page 777, of the advance sheets of that very useful publication.

In the argument here, counsel for appellant have taken the position, that "the farm was owned jointly by defendant and her

children, and articles for their joint use and benefit cannot be made a charge against the defendant in this action"; but so far as we can discover, no such point was raised in, or passed upon by, the Circuit Court, nor is it raised by any exception. There is no finding of fact upon which to base such a position, nor is there any ruling in regard to it which we can review. We have, therefore, not felt at liberty to consider it.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.